United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Brianna Garms, Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 21-20914-Civ-Scola |
| | ) |
| Celebrity Cruises Inc. and John | ) |
| Doe, Defendants. | ) |

### Order Granting Motion to Compel Arbitration but Denying Motion to Dismiss

Plaintiff Brianna Garms, a former employee of Defendant Celebrity Cruises Inc., asserts she was sexually assaulted by another Celebrity employee—identified only as "John Doe"—while aboard the *Celebrity Equinox*, in May 2018. (Compl., ECF No. 1-2.) She initially filed her complaint in state court, in September 2020. (*Id.*) Celebrity has since removed the case to federal court and now asks the Court to compel arbitration of Garms's claims, based on an employment contract between the parties. (Def.'s Not. of Rem., ECF No. 1; Def.'s Mot. to Compel, ECF No. 5.) Celebrity also asks the Court to dismiss Garms's claims. (Def.'s Mot. at 2.) Garms opposes Celebrity's bid for arbitration, arguing (1) her claims, arising out of a sexual assault, are not within the scope of the parties' arbitration clause and (2) she is exempt, as a transportation worker, from arbitration. (Pl.'s Resp., ECF No. 6.) In reply, Celebrity maintains Garms is not exempt and whether her claims fall within the scope of the arbitration agreement must be determined, in the first instance, by an arbitrator. (Def.'s Reply, ECF No. 7.) After careful review, the Court agrees with Celebrity that Garms and Celebrity should be compelled to arbitrate their dispute. The Court disagrees, however, with Celebrity's contention that Garms's case should be dismissed. Accordingly, the Court **grants in part and denies in part** Celebrity's motion to compel and dismiss this case (**ECF No. 14**).

By focusing on whether her particular claims fall within the scope of her employment agreement with Celebrity, Garms miscasts the issue here. Critically, within the parties' arbitration agreement is a delegation clause under which the parties delegated to the arbitrator "the exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to any claim that all or any part of this agreement is void or voidable and as to choice of law." (Empl. Agmt. ¶ 11, ECF No. 5-2, 7; Coll. Agmt. Art. 33, ¶ 14, ECF No. 5-3.) Despite this provision, Garms insists that the Court, and not the arbitrator, must

determine whether her claims are subject to arbitration. (Pl.'s Resp. at 4, 14–18.) As Garms frames it, a court always has exclusive jurisdiction over determining whether an arbitration provision applies to the parties' dispute. (*Id.* at 15–16 (quoting *Solymar Investments, Ltd. v. Banco Santander S.A.*, 672 F.3d 981, 990 (11th Cir. 2012) for the proposition that, where a party contests the applicability of an arbitration clause, "**the court must resolve the disagreement**") (emphasis added by Garms).) Garms's focus, however, is misplaced.

Where Garms's analysis first goes astray is her reliance on cases where the courts' analyses did not turn on the inclusion of a delegation clause in the parties' arbitration agreement. Most of the cases Garms relies on don't mention delegation clauses at all and those that do actually refute her point. *E.g.*, *Granite Rock Co. v. Int'l Broth. of Teamsters*, 561 U.S. 287, 297 (2010) (finding that the parties *agreed* arbitrability should be decided by the district court); *Solymar*, 672 F.3d 981 (no delegation clause at issue); *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204 (11th Cir. 2011) (same); *Anders v. Hometown Mortg. Services, Inc.*, 346 F.3d 1024 (11th Cir. 2003) (same); *IMS Internet Media Services, Inc. v. Hwei Chyun Lau*, 17-21299-CIV, 2017 WL 11220358, at *10 (S.D. Fla. June 29, 2017) (Torres, Mag. J.) (recognizing that "the question of arbitrability is an issue for judicial determination *unless the parties clearly and unmistakably provide otherwise*") (emphasis added, otherwise cleaned up), *report and recommendation adopted,* 17-21299-CV, 2017 WL 11220359 (S.D. Fla. Dec. 21, 2017) (Williams, J.).

In other instances, Garms misapprehends the holding of some of the cases she relies on. For example, she cites to *Green Tree Fin. Corp. v. Bazzle* as "holding that courts must decide 'certain gateway matters, such as whether the parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy.'" (Pl.'s Resp. at 15 (quoting *Green Tree Fin. Corp. v. Bazzle*, 39 U.S. 444, 452 (2003)).) But that is not at all what the Court in *Green Tree* held. Instead, what the Court there actually said was that only "[i]n certain limited circumstances," and "in the absence of 'clear and unmistakable' evidence to the contrary," do "courts assume that the parties intended courts, not arbitrators, to decide a particular arbitration-related matters," such as the applicability of the arbitration clause to the underlying dispute. *Green Tree,* 39 U.S. at 452 (2003). Garms's reliance on *Howsam v. Dean Witter Reynolds, Inc.*, is similarly misguided. 537 U.S. 79, 84 (2002). In that case, too, the Court recognized that a valid delegation clause would preclude a court from determining whether a particular claim is within the scope of an arbitration agreement. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84–85 (2002) (referencing comments to the Revised Uniform

Arbitration Act of 2000 that acknowledge that a valid delegation clause would reserve determining arbitrability to an arbitrator, rather than a court).

Ultimately, fatal to Garms's position is her failure to concede that, fundamentally, "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010). And, so long as "there is clear and unmistakable evidence," "a court may conclude that the parties agreed to arbitrate the very issue of arbitrability." *Martinez v. Carnival Corp.*, 744 F.3d 1240, 1246 (11th Cir. 2014) (cleaned up). Garms skips over these binding precedents, though, and heads straight for her substantive argument that her sexual-assault claims fall outside the scope of her arbitration agreement. In doing so, she fails to tackle the real issue: whether the parties' agreement here evinced a "clear and unmistakable" intent to arbitrate the question of arbitrability. After review, and in the absence of a contrary argument from Garms, the Court finds that it does: the parties' agreement specifically reserves to the arbitrator, and "not any federal, state or local court," "the *exclusive* authority to resolve *any* dispute relating to the . . . applicability . . . of this Agreement." (Empl. Agmt. ¶ 11; Coll. Agmt. Art. 33, ¶ 14 (emphasis added).) By the parties' own agreement, then, the arbitrability of Garms's claims should be decided, in the first instance, by the arbitrator.

This case is readily distinguishable from that presented in *IMS Internet Media Services, Inc. v. Hwei Chyun Lau*, one of the cases upon which Garms heavily relies. 2017 WL 11220358, at *10. In *IMS Internet*, the court found that the parties "deliberately assigned to the district court the question of whether [the parties] would be entitled to injunctive relief." *Id.* Here, in contrast, there is no exception to the delegation clause nor does Garms ever counter Celebrity's showing that the parties' agreement clearly and unmistakably provides that arbitrability should be decided by an arbitrator.

Garms' remaining arguments also land short. For example, Garms argues, in passing, that "she did not intend to agree to arbitrate issues that were not related to her employment with Celebrity, nor did she agree to have an arbitrator decide what issues were to be arbitrated." (Pl.'s Resp. at 17.) But this is directly contradicted by the express and unambiguous language of the parties' agreement, as recited above. And, in the face of this clear language, the extrinsic evidence Garms offers, by way of her affidavit, cannot be offered to counter the unambiguous intent revealed by the parties' written contract. *See Real Estate Value Co., Inc. v. Carnival Corp.*, 92 So. 3d 255, 260 (Fla. 3d DCA 2012) (recognizing that "in the absence of some ambiguity, the intent of the parties to a written contract must be ascertained from the words used in the

contract, without resort to extrinsic evidence") (cleaned up); *Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1147 (11th Cir. 2015) ("When federal courts interpret arbitration agreements, state contract law governs and directs the courts' analyses of whether the parties committed an issue to arbitration.").

Additionally, the Court finds no support for Garms's argument that her status as a seaman exempts her from complying with an arbitration agreement as provided for in § 1 of the Federal Arbitration Act. (Pl.'s Resp. at 4–8.) Indeed, Eleventh Circuit case law is clear: the FAA's exemption for seamen's contracts of employment does not apply to international agreements governed by the United Nations Convention on the Recognition and Enforcement of Foreign Arbitration Act.[1] *Bautista v. Star Cruises*, 396 F.3d 1289, 1300 (11th Cir. 2005); *see also Escobar v. Celebration Cruise Operator, Inc.*, 805 F.3d 1279, 1285 (11th Cir. 2015) ("In sum, this Court held that the statutory framework of the FAA and the language and context of the Convention Act preclude the application of the FAA seamen's exemption, either directly as an integral part of the Convention Act or residually as a non-conflicting provision of the FAA."). Garms's reliance on *New Prime Inc. v. Oliveira,* 139 S. Ct. 532 (2019), as overruling Eleventh Circuit precedent, is misplaced. *New Prime* did not arise under the Convention. Rather, it was a claim by a driver who worked as an independent contractor for an interstate trucking company. *Id.* at 536. Significantly, there was no international arbitration agreement, no discussion of the Convention, and no assessment of the applicability of the seaman exemption to international arbitration agreements. In short, the analysis and holding in *New Prime* is wholly inapplicable to the arbitration agreement in this case.

After careful review, then, the Court finds that the delegation provision in the parties' arbitration agreement here "clearly and unmistakably" commits the issue of arbitrability to the arbitrator. The Court, therefore, declines to consider Garms's substantive challenges to the scope and enforceability of the agreement. On the other hand, the Court disagrees with Celebrity that, in compelling arbitration, the Court should dismiss Garms's case. In the event the arbitrator in this case were to determine that the arbitration agreement here is invalid or inapplicable to any of the parties' disputes, this case would not be over and thus dismissal would be premature. Accordingly, the Court **grants in part and denies in part** Celebrity's motion to compel and to dismiss (**ECF No. 5**).

---

[1] The parties do not dispute that the arbitration agreement in this case is subject to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards. (*See* Def.'s Reply at 2; Pl.'s Resp. at 9.)

As such, the Court orders the parties to **submit their disputes to arbitration**. This case is **stayed** pending arbitration and the Court orders Garms to advise the Court once the arbitration is terminated, the claims at issue are otherwise resolved, or if any claims are not resolved through arbitration. In the meantime, the Clerk is directed to **administratively close** this case.[2]

**Done and ordered**, at Miami, Florida, June 15, 2021.

                                                    Robert N. Scola, Jr.
                                                  United States District Judge

---

[2] The Court recently entered an order regarding the lack of service on the John Doe defendant. (ECF No. 10.) If Garms timely serves the John Doe defendant, as provided for in that order, the Court will reopen this case as to those claims.